LAW OFFICES OF MARK A. ROSENBAUM
4940 Byrd Lane, Suite 100
Anchorage, Alaska 99502
(907) 243-2400

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:05-CR-079-JKS |
| | ) | |
| Plaintiff, | ) | SENTENCING MEMORANDUM |
| | ) | FOR THE DEFENSE IN SUPPORT |
| vs. | ) | OF OBJECTIONS TO THE |
| | ) | PRESENTENCE REPORT |
| JOSHUA AARON HILER, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Defendant Joshua Aaron Hiler, by and through the

Law Offices of Mark A. Rosenbaum, and pursuant to Fed. R. Crim. P. 32(i)(3), 18

U.S.C. §§ 3553(a) and 3661, and provides the following legal memorandum in

support of his objections to the Presentence Report (PSR). The Defendant has a

right to be sentenced on the basis of accurate information and that the government

has the burden of proving all disputed enhancements by proof beyond a reasonable

doubt. Defendant seeks correction of certain portions of the PSR and to provide

the Court with relevant information to consider in determining the sentence to

impose in this case.

    **I.**    **THE DEFENDANT IS ENTITLED TO
RESOLUTION OF ALL DISPUTED ITEMS
CONTAINED IN HIS MOTION AND ALL
CONTROVERTED INFORMATION CONTAINED
IN THE PSR MUST BE SUPPORTED BY
RELIABLE EVIDENCE.**

      The United States Supreme Court has made clear that there is a due

process right to be sentenced on the basis of accurate information. United States v.

Tucker, 404 US 443 (1972).  "Due process in sentencing demands, of course, that

the [information] considered by a court in any given case be supported by an

evidentiary basis beyond mere allegation in an indictment." United States v.

Castellanos, 904 F.2d 1490, 1495 (11th Cir. 1990)  In fact, "[t]he sole interest of the

defendant in sentencing is the right not to be sentenced on the basis of inaccurate

or unreliable information." United States v. Lopez, 898 F.2d 1505, 1512 (11th Cir.

1990)

      Part of this fair sentencing procedure has been codified under Rule

32(i)(3), which provides that at sentencing, the court:

> "(B) must—for any disputed portion of the presentence
> report or other controverted matter—rule on the dispute,
> or determine that a ruling is unnecessary either because
> the matter will not affect sentencing, or because the court
> will not consider the matter at sentencing; and (C) must

2

>   append a copy of the court's determinations under this
>   rule to any copy of the presentence report made available
>   to the Bureau of Prisons."

The Ninth Circuit has specifically found that when an item contained in the PSR is disputed for sentencing, a district court is required to either make a factual finding resolving the controversy or state for the record that the controverted fact was not considered in the imposition of the sentence. United States v. Fernandez-Angulo, 897 F.2d 1514, 1516 (9th Cir. 1990). The court must ensure that the factor is otherwise proved by reliable evidence before using it to increase the sentence. United States v. Weston, 448 F.2d 626, 634 (9th Cir. 1971). If the Court of Appeals cannot clearly tell from the record if this dictate has been followed, it will remand the case for re-sentencing. Fernandez-Angulo at 1516 (citations omitted).

The court's obligation to make findings of fact does not simply reach issues which would have an effect on the Sentencing Guidelines; rather, courts have recognized that the report has importance beyond sentencing, therefore, resolution of all issues is imperative. United States v. Kerr, 876 F.2d 1440, 1445 (9th Cir. 1989).

Of course, the government bears the burden of proving any aggravating factor at sentencing. United States v. Petty, 992 F.2d 887, 891 (9th Cir.

3

1993).  Defendant would ask that the Court require the government meet this burden with regard to each factual dispute.  If the government cannot provide reliable proof as to the allegations, then they should be stricken from the PSR, so that they do not harm defendant as he travels through the prison system.  *See, e.g.,* Berry v. Department of Justice, 733 F.2d 1343 (9th Cir. 1984).

## II.    ANY CONTESTED FACTS MUST BE PROVED BEYOND A REASONABLE DOUBT BEFORE THEY CAN BE ASSESSED AGAINST THE DEFENDANT TO INCREASE HIS SENTENCE.

Whatever the constitutional limitations on the advisory sentencing scheme, it can never be "reasonable" to base any significant increase in a defendant's sentence on facts that have not been proved beyond a reasonable doubt. See Ring v. Arizona, 536 U.S. 584, 592-93, 153 L. Ed. 2d 556, 122 S. Ct. 2428 and n.1 (2002) (holding that any fact essential to imposition of the death penalty must be submitted to a jury and found beyond a reasonable doubt); Apprendi v. New Jersey, 530 U.S. at 477 (2000) (finding a sentence violates the right to "a jury determination that [the defendant] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"); Jones v. United States, 526 U.S. at 243 n.6 (1999) (holding that the carjacking statute, if construed as defining a single crime with three maximum penalties instead of three distinct offenses would

4

violate the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment).

Virtually all contested specific offense characteristics and upward adjustments involve separate criminal conduct. That is true in the instant case.  For example, the additional drug types and quantities attributed to defendant in the PSR are each separate crimes.  United States v. Toliver, 351 F.3d 423, 430 (9th Cir. 2005) .  For these facts, the defendant is both presumptively innocent and has a right against self-incrimination. Mitchell v. United States, 526 U.S. 314 (1999) The Fifth Amendment covers any proceeding that could lead to "longer incarceration") (citing McKune v. Lile, 536 U.S. 24, 52 (2002) (O'Connor, J., concurring)). The reasonable doubt standard is a necessary safeguard to assure that "longer incarceration" does not result from a prisoner's exercise of self-incrimination rights at sentencing, leading to an unreliable result on a controverted issue by use of a preponderance standard.

It is a cardinal principle of statutory interpretation that, if there is a "serious doubt" as to a statute's constitutionality, the court must "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Zadvydas v. Davis, 533 U.S. 678, 689 (2001) (quoting Crowell v. Benson, 285 U.S. 22, 62 (1932)).  "[E]very reasonable construction must be

resorted to, in order to save a statute from unconstitutionality." <u>Hooper v. California</u>, 155 U.S. 648, 657 (1895)). "[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems" <u>INS v. St. Cyr</u>, 533 U.S. 289, 299-300 (2001)).

The survival of the reasonable doubt standard separate from the Sixth Amendment right to a jury trial raises just such a doubt. The concern is especially high because of the extreme personal interest in liberty, the danger of erroneous punishment under a lesser standard, and the constellation of constitutional rights at issue where unadjudicated criminal conduct results in a higher sentence. The reasonable doubt standard is included among the interests "of transcending value" that cannot be compromised. See <u>Perry v. Cindermann</u>, 408 U.S. 593, 597 (1972); <u>Speiser v. Randall</u>, 357 U.S. 513, 525-26 (1958).

In this case, the Court should avoid the difficult question of whether the Constitution requires the reasonable doubt standard and should utilize proof beyond a reasonable doubt as a matter of statutory construction or judicial discretion. This result is not only compelled by law, but is good sentencing policy. The greater certainty of the reasonable doubt standard encourages confidence in the judicial system that only punishes based on facts proven to a high standard.

The evil of the pre-<u>Booker</u> guidelines of the "tail wagging the dog" – a conviction

for a relatively minor amount of drugs resulting in a huge sentence based on

transactions only provable by a preponderance – will be a thing of the past.  The

reasonable doubt standard is essential to fair and accurate sentencing.

Several district courts agree that the standard of beyond a reasonable

doubt should be employed in applying sentencing enhancements.  In <u>United States</u>

<u>v. Huerta-Rodriguez</u>, 355 F. Supp. 2d 1019, 1026 (D. Neb. 2005) (Bataillon,J.), the

court found that "[i]n order to comply with due process in determining a

reasonable sentence, this court will require that a defendant is afforded procedural

protections under the Fifth and Sixth Amendments in connection with any facts on

which the government seeks to rely to increase a defendant's sentence." The court

noted that "when a defendant pleads guilty, he or she, of course, forgoes not only a

fair trial, but also other accompanying constitutional guarantees. *** A waiver of

the right to a trial by a jury, however, does not equate to a waiver of the right to

have the government prove its case beyond a reasonable doubt." <u>Id</u>. at 1027 (cites

omitted); see also <u>United States v. Kelley</u>, 355 F. Supp. 2d 1031 (D. Neb. 2005)

(Bataillon, J.)

In <u>United States v. Harper</u>, 360 F. Supp. 2d 833, 836 (E.D. Tex. 2005)

(Clark, J.), the court concluded that sentencing enhancements "require more than

inferences drawn from a preponderance of evidence."  See also,  United States v.

Ochoa-Suarez, 2005 U.S. Dist. LEXIS 1667 (S.D.N.Y. Feb. 7, 2005) (Keenan, J.)

(finding that while before Booker court would have applied U.S.S.G. § 3B1.1, after

Booker it would not because there has been no finding by a jury beyond a

reasonable doubt); United States v. Gray, 362 F. Supp. 2d 714 (S.D. W. Va. 2005)

(Goodwin, J.) (both preponderance and reasonable doubt standards may apply,

post-Booker, to fact-finding in cases to aid in determining how much weight to

give advisory guideline range.)

   In United States v. Pimental, 367 F. Supp. 2d 143, 153 (D. Mass.,

2005), "[t]he fair preponderance standard made sense in the context of fully

indeterminate sentencing.  It does not make sense in this hybrid regime where rules

still matter, and certain facts have important, if not dispositive, consequences."

These facts "should be tested by our highest standard of proof."  Id at 153.  "We

cannot have it both ways: We cannot say that facts found by the judge are only

advisory, that as a result, few procedural protections are necessary and also say that

the Guidelines are critically important. If the Guidelines continue to be important,

if facts the Guidelines make significant continue to be extremely relevant, then Due

Process requires procedural safeguards and a heightened standard of proof, namely

proof beyond a reasonable doubt" Id. at 154.  Accordingly, the defense submits

that this Court should determine any enhancements contained in the PSR and

requested by the government to be proved beyond a reasonable doubt.

**A.    The Condition of Supervised Release
Recommended for Defendant in the Addendum
to the PSR Is Not Factually Supported, and the
Other "Facts" Objected to in the PSR Itself are
Based on the Unreliable, Uncorroborated, Self-
serving Statements of Cooperating "Snitches".**

As the Court is aware, defendant entered a plea agreement stipulating

to an offense involving a conspiracy to tamper with a witness.  However, the

probation officer has recommended a condition of supervised release totally

unrelated to this offense and, moreover, apparently based upon an inference from

unproven prior conduct.  To date, however, the government has not demonstrated,

either by proof beyond a reasonable doubt or by a preponderance of the evidence,

that defendant has ever engaged in conduct warranting such a condition of

supervised release .

Counsel's objections to the PSR were as follows.

"● Mr. Hiler strongly objects to the suggested sex offender
evaluation, as there is no factual basis for it.  The underlying facts of the offense
referenced involved a 17 year old boy and a 14 year old girl, who represented
herself as significantly older.  However, if included in the PSR, Mr. Hiler will be
forced to live for over 17 years with the BOP tag as a "kiddy diddler."  I am sure
you are aware what harm can come of this.  Moreover, we are informed that BOP
will not conduct the suggested evaluation until 18 months before his projected
release date, thus deferring it for over 15 years, which does nobody any good in the

short run.  Accordingly, we will be requesting that . . . any reference to it be removed from the Presentence report.

● Mr. Hiler objects to all references in the draft to the original indictment charges since the indictment is to be dismissed following imposition of sentence.  Allowing them to remain in the report will operate to prejudice Mr. Hiler's program eligibility within BOP.

● Mr. Hiler objects to all references in the draft to information allegedly provided by an individual identified in the report only as "MD," (Paragraphs 19, 20, 21, 24, 25, 26, 27, 31, 34, 35, 36 and 37), and all references attributed to an individual identified in the report only as the "CI," (Paragraphs 56 through 66). These references, where not recorded,  must necessarily be based upon the uncorroborated, untested, self-serving statements of  individuals cooperating with the police, who were seeking to minimize their own involvement in criminal activities, and, at the same time, reduce their own sentencing exposure by exaggerating the importance of the information they were providing.   There should be some credible proof of their veracity before my client's BOP status is effectively directed beyond minimum security based thereon, particularly in a post *Apprendi-Blakely-Booker* world where such allegations must be proven beyond a reasonable doubt.  The PSR contains no evidence of the veracity of the unrecorded statements which will undoubtedly be used to establish Mr. Hiler's security designation within BOP.

● Mr. Hiler objects to the criminal history category recommended by the presentence report writer since 4 criminal history points are assigned based solely upon driving offenses.  (Paragraphs 100, 101, 102, 103.)  As such, the criminal history category recommended substantially over-represents the seriousness of Mr. Hiler's criminal history and should be reduced pursuant to U.S.S.G. §4A1.3.

● Mr. Hiler objects to the references in paragraph 108, as they are part of the indictment which is to be dismissed following imposition of sentence, or the subject of a state action based on the same nucleus of operative fact. Moreover, they give the appearance of referencing an additional case, which is misleading. Allowing them to remain in the report will operate to prejudice Mr. Hiler's program eligibility within BOP.

● Mr. Hiler objects to the references in paragraph 109, as they relate only to matters which were dismissed. There is no evidence to suggest that there was even probable cause for the arrest, yet Allowing them to remain in the report will operate to prejudice Mr. Hiler's program eligibility within BOP.

● Mr. Hiler objects to the references in paragraphs 120 through 124, as they are redundant and repetitive of the matters referenced in paragraphs 95 through 97, and give the appearance of referencing an additional matters, which is misleading. Allowing them to remain in the report will operate to prejudice Mr. Hiler's program eligibility within BOP.

● Finally, Mr. Hiler objects to the exclusion in paragraph 95 of the fact that he and his brother were the first to self-report the incident. As presented, the paragraph is misleading."

The objected to "factual" references in the PSR remain based on nothing more than the uncorroborated, untested, self serving statements of individuals cooperating with the government, who were seeking to mitigate their own criminal responsibility for drug offenses. Based on these untested statements, the probation officer has included many "factual" assertions in the presentence report which will clearly impact defendant negatively once he is within the jurisdiction of the U.S. Bureau of Prisons.

Although not an increase in penalty *per se*, the potential effect on the nature of the penalty he may suffer is alarming. Instead of a minimum or medium security facility where he would likely have frequent contact with other human beings, those bald assertions in the PSR could be used to place him in a maximum

security setting for over a decade where he could potentially be derived of virtually

all human contact.  Moreover, those same assertions could disqualify him from

benefits such as education, drug rehabilitation, job training, and programs which

could lead to an actual reduction in his penalty. There should be some credible

proof of the veracity of these statements before a defendant's sentence can be made

harsher.  If the government, through BOP, wants to deprive defendant of

rehabilitation benefits he would be otherwise be eligible for based on certain facts

alleged in the PSR, then this Court should employ a beyond a reasonable doubt

standard in determining those facts.  See, United States v. Huerta-Rodriguez, 355

F. Supp. 2d 1019, 1026 (D. Neb. 2005); United States v. Pimental, 367 F. Supp. 2d

143, 153 (D. Mass., 2005).  The PSR contains no evidence of the veracity of the

statements used to establish those facts, and thus cannot be supported by a judicial

finding beyond a reasonable doubt.


**III.   THIS COURT SHOULD CONSIDER ALL RELEVANT
         FACTORS UNDER 18 U.S.C. §§ 3553(A) AND 3661 IN
         DETERMINING A REASONABLE SENTENCE THAT IS
         NO GREATER THAN NECESSARY TO ACHIEVE THE
         PURPOSES OF SENTENCING.**

As this Court is aware, in United States v. Booker, 125 S. Ct. 738

(2005), the Supreme Court held that the mandatory guideline system created by the

Sentencing Reform Act of 1984 (SRA) was unconstitutional. Therefore, the appropriate remedial measure required the severance and excision of two provisions of the federal sentencing statute, including 18 U.S.C. § 3553(b)(1), the provision that made the Guidelines mandatory. See Booker, 125 S. Ct. at 757 (2005) (Breyer, J.). "So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., 28 U.S.C. § 991 et seq., makes the Guidelines effectively advisory." 125 S. Ct. 738, 757. As a consequence, the federal sentencing statute still "requires a sentencing court to consider Guidelines ranges, . . . , but it permits the court to tailor the sentence in light of other statutory concerns as well." Id.

After Booker, federal sentencing is vastly different. Treating the Guidelines as advisory requires that the Court consider the guideline range calculation as merely one of many factors in determining a sentence *no greater than necessary to achieve the goals of sentencing* set forth in Section 3553(a)(2). The PSR recommends a guideline range of 360 to 480 months imprisonment. The Defendant submits that a sentence within that range is greater than necessary to achieve the goals of sentencing, in violation of § 3553(a). Several factors exist, independent of the guideline range calculations, that warrant a reasonable sentence below what is contemplated in the PSR.

13

### (A)    The § 3553(a) Sentencing Mandate

Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a) and the "factors" to be considered in fulfilling that mandate.  The overriding principle and basic mandate of § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2): (a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment); (b) deterrence; (c) incapacitation (to protect the public from further crimes); and (d) rehabilitation (to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner). United States v. Phelps, 366 F.Supp.2d 580, 587 (E.D. Tenn. 2005).

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision."  The parsimony provision is not just another "factor" to be considered along with the others set forth in Section 3553(a).  Instead, it sets an independent limit on the sentence a court may impose.  See United States v. Denardi, 892 F.2d 269, 276-77 (3rd Cir. 1989)  Since § 3553(a) requires sentence to be no greater than necessary to meet four purposes of

sentencing, imposition of sentence greater than necessary to meet those purposes is reversible, even if within guideline range. *Id*.

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider several factors listed in Section 3553(a). These factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the kinds of sentence available;" (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7). Neither the statute itself nor <u>Booker</u> suggests that any one of these factors is to be given greater weight than any other factor. However, it is important to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

In addition to considering factors under § 3553(a), sentencing courts have a duty to consider many factors that the Guidelines specifically exclude from consideration. As noted by the Second Circuit, "[p]rior to Booker/Fanfan, the section 3553(a) requirement that the sentencing judge "consider" all of the factors enumerated in that section had uncertain import because subsection 3553(b)(1)

15

required judges to select a sentence within the applicable Guidelines range unless

the statutory standard for a departure was met.  Now, with the mandatory duty to

apply the Guidelines excised, the duty imposed by section 3553(a) to 'consider'

numerous factors acquires renewed significance."  United States v. Crosby, 397

F.3d at 111 (2nd Cir. 2005).

For example, under 18 U.S.C. § 3661, "no limitation shall be placed

on the information concerning the background, character, and conduct of [the

defendant] which a court of the United States may receive and consider for the

purpose of imposing an appropriate sentence".  United States v. Phelps, 366

F.Supp.2d 580, 592-93 (E.D. Tenn. 2005).  This statutory language overrides the

now-advisory policy statements in Part H of the sentencing guidelines, which list

as "not ordinarily relevant" to sentencing a variety of factors such as the

defendant's age, educational and vocational skills, mental and emotional

conditions, drug or alcohol dependence, and *lack of guidance as a youth*.  Id.

Accordingly, this Court must consider all factors – even factors

prohibited by the formerly mandatory Guidelines in determining the type of

sentence that satisfies the sentencing mandate of § 3553(a).  After considering the

§§ 3553(a) and 3661 factors (including the guidelines), the Court has full

discretion to sentence anywhere within the statutory range.  If the Booker Court

thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so.  <u>Booker</u>, 125 S. Ct. at 791 (Scalia, J., dissenting).

> **(B)    Defendant's Lack of Youthful Guidance and Current Health are Mitigating Factors to Consider in Determining a Sentence not Greater than Necessary to Achieve the Goals of Sentencing.**

In the instant case, several factors are present that both individually and collectively indicate that a sentence below what is contemplated by the Guidelines achieves the sentencing goals of retribution, deterrence, incapacitation, and rehabilitation. See, 18 U.S.C. § 3553(a)(2).  These include a substantial lack of youthful guidance and the defendant's  health.

As an initial matter, because the PSR predates the MRI, it does not relect that the defendant suffers from herniated discs and vertebral degeneration for which reference to an orthopedic surgeon was made in December, 2005, but never followed up on either by Anchorage Jail personnel or the U.S. Marshals Service. Because of this omission, the PSR is now inaccurate.  Defendant suffers from a serious chronic ailment of the spine, a potentially debilatitng condition unless there is appropriate medical intervention, by surgery or otherwise.  Left untreated, this condition could become worse over time.  Incarceration will likely exacerbate

defendant's health problems. Further, because of the defendant's health issues, his term of incarceration will be more onerous than other defendants. Accordingly, the defense requests that this Court take into consideration his health and the affect incarceration will have on his health in determining the punishment to impose on him at sentencing.

The Sentencing Commission considers an "extraordinary physical impairment" a legitimate reason for imposing a sentence below the applicable guideline range. U.S.S.G. § 5H1.4. There is a great variety of physical conditions that courts have deemed to be so extraordinary as to warrant sentencing departures. The distinction appears to be somewhat arbitrary, anchored in a court's experience rather than in fully articulable criteria.

Prior to Booker, when only extraordinary factors warranted a sentence outside the applicable guideline range, some of the disabilities warranting a downward departure were: degenerative hip and knee condition with non-active tuberculosis and Hyperactive Adjustment Disorder, United States v. Boy, 19 F.3d 30 (unpublished opinion), 1994 WL 59781, at *3 (9th Cir. Feb. 25, 1994); HIV infection, United States v. Schein, 31 F.3d 135, 138 (3d Cir. 1994) (HIV "may" be sufficient, but 5H1.4 departure was not applicable to a defendant subject to a statutory mandatory minimum), amyotrophic lateral sclerosis (Lou Gehrig's

Disease), United States v. Roth, 1995 U.S. Dist. LEXIS 996, 1995 WL 35676, at

*1 (S.D.N.Y. Jan. 30, 1995); liver cancer, United States v. Maltese, 1993 U.S. Dist.

LEXIS 8403, 1993 WL 222350, at *11 (N.D. Ill. June 22, 1993); kidney cancer,

United States v. Basey, 67 F.3d 303 (unpublished opinion), 1995 WL 567356, at

*1 (8th Cir. sept. 27, 1995); a polio-crippled leg, United States v. McClean, 822 F.

Supp. 961, 962 (E.D.N.Y. 1993); a double amputation below the knee due to war

wounds, United States v. Greenwood, 928 F.2d 645, 646 (4th Cir. 1991); and

pregnancy, United States v. Denoncourt, 751 F. Supp. 168 (D. Haw. 1990).

     If a defendant's  health makes his incarceration more onerous than

others, a reduced sentence maybe warranted.  See Cordero v. Coughlin, 607 F.

Supp. 9, 10 (S.D.N.Y. 1984) (segregation of HIV-infected inmates from the

general population is constitutionally permissible to protect both sufferers and

other prisoners from tensions and harm which could result from other prisoners'

fears); United States v. Blarek, 7 F. Supp. 2d 192, 211 (E.D.N.Y.), *aff'd*, 166 F.3d

1202, 1998 WL 907429 (2d Cir. 1998) (removal from general population because

of AIDS would make a sentence more difficult to endure).

     In United States v. Blarek, 7 F. Supp. 2d 192 (E.D.N.Y.), aff'd, 166

F.3d 1202 (2d Cir. 1998), a downward departure was granted to a defendant with

AIDS because, "despite federal authorities' concern for prisoners' welfare,

incarceration is likely to be detrimental to this defendant's health, resulting in a lessening of his present life expectancy." Id. at 213.  On this ground a reduction in a defendant's sentence is warranted. See United States v. Schein, 31 F.3d 135, 138 (3d Cir.1994) (where a person is HIV-positive and may have related medical problems, departure may be warranted); United States v. Streat, 22 F.3d 109, 112-13 (6th Cir. 1994); United States v. Gigante, 989 F. Supp. 436, 443 (E.D.N.Y. 1998) ("Defendant's fragile physical state, his advanced age, and a court's duty not to impose sentences that are excessively cruel argue strongly for a downward departure.")

In the instant case, defendant's health problems will be difficult to treat adequately.   Defendant submits that it may be difficult for him to receive adequate treatment for his condition while he is incarcerated, as evidenced by his recent experiences.  Even if the prison system is able to provide adequate treatment, physical therapy, and access to medications, his condition will make his term of incarceration far more onerous than other inmates.

Following Booker, *supra*, the district court should review the sentencing factors in 18 U.S.C. § 3553(a) in determining whether to apply the now advisory Guidelines.  One factor listed there is "the need for the sentence imposed - - . . . (D) to provide the defendant with needed . . . medical care, or other

correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).
Accordingly,  health is a factor that this Court should take into consideration when
imposing sentence and choose the lowest term required by law.

Perhaps more significant is the fact that at the time of the events
underlying the charge to which defendant pleaded guilty, he was only 21 years old,
having suffered what may be best characterized as an extremely poor environment
for growing up.  In short, he was a juvenile delinquent who never really grew up.
Although dismissed by the guidelines as "not ordinarily relevant," it is clear under
the facts of this particular case that defendant's boastful conduct was the direct
result of his lack of maturity.  This too, should be taken into account in fashioning
a sentence appropriate to this individual case.

## CONCLUSION

Based on the foregoing, the defense respectfully requests that this
Court hold the government to its burden of proof beyond a reasonable doubt with
regard to each disputed fact prior to the imposition of sentence.

DATED: _____          Respectfully submitted,

21

LAW OFFICES OF MARK A. ROSENBAUM
Attorneys for Defendant




By:    s/ Mark A. Rosenbaum
       MARK A. ROSENBAUM
       4940 Byrd Lane, Suite 100
       Anchorage, Alaska  99502
       Voice: (907) 243-2400
       Fax: (907) 243-2609
       E-mail: mark.rosenbaum.law@gci.net
       Alaska Bar No. 8906033

I declare under penalty of perjury
that a true and correct copy of the
foregoing LEGAL MEMORANDUM
FOR THE DEFENSE IN SUPPORT OF
OBJECTIONS TO THE PRESENTENCE REPORT

was served upon

DAVID NESBITT
Special Assistant U.S. Attorney
222 W. 7th Ave., Rm. C-253
Anchorage, Alaska 99513

on May 7, 2006, via:

( ) U.S. Mail
( ) U.S. Mail Certified
( ) FAX
( ) Hand Delivery to the USAO
( ) Private Messenger Service
(X) Email through the CM/ECF System
(X) Email to David.Nesbitt@usdoj.gov


And that a courtesy copy was provided to

USPO Timothy M. Astle

Executed at Anchorage, Alaska, on
May 7, 2006.


 s/ Mark A. Rosenbaum